This time we'll hear United States v. Gobern. May it please the court, my name is Elizabeth Johnson and I'm representing the appellant Alexio Gobern. Mr. Gobern is before this court challenging his conviction of conspiracy to distribute cocaine, only to the extent that he's challenging the finding that he conspired to distribute five kilograms or more. The trial evidence concerned a substantial number of mailings, only some of which were seized, so only for some of which we have an actual weight of the cocaine. There are four packages that were directly tied to Mr. Gobern through his text, through his phone calls, through his fingerprints, and where there was an actual seizure. That amount is only 3.9 kilograms. It doesn't get up to five. In an effort to get up to five, the government talked about two other kinds of packages. One was a set that are, in fact, tied to Mr. Gobern. He made phone calls about them. He texted. They were sent to his address, similar to the earlier set. But there's absolutely no evidence in the record whatsoever as to what was in those packages and if, in fact, it were drugs, what kind of drugs, and if it were cocaine, how much. There's nothing that would allow the jury to draw any kind of inference or conclusion other than pure conjecture as to what was in those packages. So those should not be used to get up to the five-kilogram number. Well, there was more concerning those packages. They were coming from certain people. I mean, this is not the food of the month club. But we still don't know anything about exactly what's inside them. There's nothing that lets the jury determine what the weight was within those packages. But isn't that the kind of circumstantial inference juries make all the time? Well, yes, Your Honor, but there are limits as to what kinds of inferences we allow to be drawn. And the cases that talk about this, although they're not exactly the same situation, the ones that we have are cases where the court is making a finding at sentencing. And the reason those are easier to analyze, obviously, is that judges explain their reasoning. But the other thing that's important about those cases is that it's a much lower standard of proof. So we have cases where sentencing judges, under the guidelines, are estimating an amount for relevant conduct purposes by a mere preponderance of the evidence and they can use inadmissible evidence. That's contrary to the instruction they get, which is you can consider both direct and circumstantial, but the standard is still beyond a reasonable doubt. And what I'm saying, and what my argument is here, is that if a judge had drawn the conclusions that the government is arguing the jury properly did, this court would reverse it on a sentencing finding. And they have done that. Cases that we've cited, Shannoubi and Martinez and Thompson. Martinez, Judge Jacobs, was on the panel, and it's very similar. Where the defendant, his crime was involved in setting up means of transport of contraband. And there was specific evidence as to the weight of specific transactions that he was involved in. And those were added up. That was fine. You were allowed to do that. But there are other transactions where they didn't know what had been involved in the transactions. Well, you focused on one of the two ways by which the jury might get to five, but there was like three in packages that were sent to co-conspirators, and your client was convicted of conspiracy. But our argument is that those are not actually co-conspirators because what we're looking at here is a hub-and-spoke conspiracy, and Mr. Goburn and the packages that were sent to him are a completely different spoke from those other packages. The law is clear that in order for them to be co-conspirators, it wasn't enough that they were getting their drugs from the same supplier. We don't dispute that. The drugs apparently are coming from Mr. Canales in Puerto Rico. His fingerprints are on packages that go to both. But there's absolutely nothing that shows that these two separate groups of distributors, which is, you know, Mr. Goburn and Mr. Wilburn on one hand, and then Mr. Pizarro and Mr. Almedo on the other, are in any way part of the same conspiracy. They don't know about each other. They don't assist each other. They're not interdependent with each other. There's absolutely nothing except that they're getting their cocaine from the same source. And there are cases in this circuit and many other circuits that say that simply having the same supplier doesn't make you co-conspirators. The drugs or tips or other kinds of contraband, the two groups have to, in fact, they have to be aware generally that they exist. Okay? And there's nothing that shows that Mr. Goburn knows that Mr. Canales are sending drugs to a separate distribution chain from him. And even beyond that, even if he knew about that, they would have to assist one another. Mr. Goburn was also active in the conspiracy in Puerto Rico whence the packages originated. But, again, there's absolutely nothing in the record that supports any inference that Mr. Goburn was involved in shipping drugs to anyone other than himself and Mr. Wilburn. There is no package that goes to someone other than him or Mr. Wilburn that has his fingerprints on it, that he texts about, that he makes phone calls about, that he addresses to himself. Nothing. The packages that go to Mr. Pizarro are tied exclusively to Mr. Canales and to Mr. Almedo. No question Mr. Canales is the common source. No one is challenging that. But Mr. Canales could very easily, and in this case the evidence shows pretty clearly did, set up separate distribution chains that were not connected to one another, were not interdependent, and in fact that he probably- We have your argument. Thank you. We'll hear you on rebuttal. Thank you, Your Honor. May it please the Court. My name is Alex Rossmiller, and I'm an Assistant United States Attorney in the Southern District of New York. In this case, there was ample, abundant evidence presented in the trial below for a jury properly to infer that the drug conspiracy involved five or more kilograms of cocaine known or reasonably known, I'm sorry, known or reasonably foreseeable to the defendant. Specifically, as the Court has discussed, the amount in four packages seized and directly linked to the defendant was 3.9 kilograms, and evidence was presented as to five additional packages involved in the conspiracy that were directly linked to the defendant, and there were multiple permissible ways to infer a total of five or more kilograms as part of the total conspiracy. What's the evidence that suggests that the Pizarro mailings were reasonably foreseeable to the defendant here? There is varying evidence with respect to the individual packages that are generally labeled as the Pizarro packages. In part, those packages were directly linked to Mr. Canales, who has been discussed previously today. There is evidence that the defendant in this case traveled to Puerto Rico and was in the conspiracy, obviously, directly with Mr. Canales as well as others, and that packages sent by Mr. Canales to other individuals were reasonably foreseeable to the defendant here, including to another individual who appeared in text messages associated with the defendant here, an individual who I think was only identified at the trial as Boo Boo, but it's not limited to just Mr. Gobern and Mr. Wilburn. With respect to packages coming in, and it's not just linked to the defendant here with respect to packages being sent out by Mr. Canales. How? I'm sorry? You said it's not just linked. What's the evidence? All you need is one, so what's the best shipment, the best connection with this defendant for any package that has more than 1.1? So not to push my luck, Your Honor, but I'll choose two if I may. The first is there are packages identified in appellant's brief as the October 29th, 2015 mailings, identified in our papers as packages five, six, and seven. One of those packages was seized. It contained two kilograms of cocaine. Those were all mailed on the same date from Puerto Rico to separate New York addresses. All three of the packages were tracked by Mr. Gobern's home address IP. Two of the three, in fact, had similar weights, including one of the one that was seized, and the one that was seized had two kilograms. So if the jury inferred, which it properly could do, that one of those other two packages, in fact, had two kilograms of cocaine, you get to five right there. This is the package six that contained the brick-shaped objects? Yes, Your Honor. And its weight was essentially the same as package number five? That's correct, Your Honor. So even though we don't know, there's no evidence that the contents of package six were not recovered, the jury is entitled to infer that those contents were cocaine? That's correct, Your Honor. And with respect to the so-called Pizarro and Almeida mailings, package number ten, which is, I think, just generally identified as one of the Pizarro mailings in appellant's brief, was seized, had two kilograms, and was packaged not only with a silverware container, much as the same as another package that was seized, package one in our brief, the March 3, 2015 mailing, an appellant's brief, which was also hidden in silverware, that package, which again was two kilograms, had Mr. Canale's fingerprints on it as well. And that's someone who Mr. Gobern interacted with directly. Subject to any other questions, the government will, therefore, rest on its admission. Thank you. We'll hear rebuttal. Thank you, Your Honor. Just quickly on the two points that Mr. Rossmiller just made. The similarity of packaging doesn't, in fact, establish anything about Mr. Pizarro and Mr. Gobern's interrelationship. It supports exactly what we've been saying all along, that Mr. Canale is the common source. Mr. Canale decides how to package it. He decides to put in the silverware. He may send it to completely separate distribution chains. It doesn't have any, it doesn't do anything at all to show the connection between Gobern and Pizarro. And the other question is the weight of the packages. And the government argued here, as they have in their brief, that similarity of weight of the total mailed packages justifies an inference as to the weight of the amount of drugs inside. That is a very selective reading of the evidence here, because if we look at what's actually been shown, the weight of the mailed packages and the weight of the drugs inside from the packages where we have both sets of information, it's not correlated at all. There's three packages here where the amount of drugs is roughly half a kilo. And the weights of the packages are all over the map. If we look at 219 in the appendix, there's a package mailed August 31st, 2015. The drug weight is 530 grams. The package itself, the net on the mail package is 9 pounds. There's another one at appendix 194 to 195. The drugs, it's a very similar amount, 504 grams. The package itself is only 3 pounds. And then there's another one, 406 grams. The package is 2 pounds. So there's really no legitimate way to infer from the weight of the packages what's inside. And, again, going back to the cases that I've talked about earlier, in Schenube, this is exactly what Judge Weinstein did on sentencing. He said, I have one drug transaction, and this is how much heroin was involved. I don't know how much there was in the other ones, but I'm going to assume it's about the same. And the Second Circuit said, no, you cannot do that. The Second Circuit's law is that you have to have evidence directly linking a specific drug amount to this defendant. And for the Pizarro packages, there is no direct evidence linking the drugs to Mr. Gobern in any way, because it's a completely separate conspiracy. And as to the ones that are connected to Mr. Gobern but were not seized, there is absolutely nothing that supports a finding of a specific amount of drugs. Thank you. Thank you. Thank you both. We'll reserve decision. The case of Perkins v. Bronx-Lebanon Hospital Center is taken on submission.  Please adjourn to court.